# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SALINA TRIVEDI,**

   **Plaintiff,**

   **v.**

**BD 112A LLC, et al.,**                                    **Case No. 18-CV-313**

   **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTIONS
## FOR SUMMARY JUDGMENT

---

Salina Trivedi sues her former landlord BD 112A LLC, BD112B LLC, and Show4 LLC (collectively her "landlord" or the "landlord defendants") and its management company, Northern Management, LLC ("Northern") for violations of the Wisconsin Consumer Act, Wis. Stat. § 100.20, and for breach of contract. (Docket # 1.) Trivedi also sues Northern's legal counsel, Bruck Law Offices, S.C. ("Bruck"), for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act. (*Id.*) The landlord, Northern, and Bruck have all filed motions for summary judgment in their favor. For the reasons further explained below, Bruck's motion for summary judgment is granted and the landlord defendants and Northern are dismissed for lack of subject-matter jurisdiction.

## UNDISPUTED FACTS

On August 16, 2017, Trivedi signed a lease to rent 114 South University, No. 11, at an apartment complex called "The Preserves." (Bruck's Proposed Findings of Fact ("PFOF") ¶ 6, Docket # 43 and Trivedi's Resp. to Bruck's PFOF ¶ 6, Docket # 59.)

Northern is the landlord's agent for collection of rent. (*Id.*) Upon signing the lease, Trivedi agreed to pay to the landlord a security deposit of $1,635.00 plus $562.00 to cover the first sixteen days of rent for August 2017. (*Id.* ¶ 8.) The checks Trivedi wrote to cover those amounts were rejected by Trivedi's bank for nonsufficient funds ("NSF"). (*Id.*) On September 6, 2017, Northern's Property Manager, Patricia Borchardt, advised Trivedi via email as follows: "None of your checks have cleared and your September rent is due. Please contact me ASAP regarding this. Full payment of $3,411.00 is due and must be paid with either a cashier's check or money order." (*Id.* ¶ 10; Landlord and Northern's PFOF ¶ 6, Docket # 49 and Trivedi's Resp. to Landlord and Northern's PFOF ¶ 6, Docket # 57.) The same day, Trivedi responded via email: "Sorry –it took a long time for them to go through and in the chaos of moving and all the expenses of it, I thought they had already cleared weeks prior–do you have a drop box? I can get the checks filled right away but I need till [sic] Monday to get the rent caught up when I can get my next check." (Bruck's PFOF ¶ 10 and Trivedi's Resp. to Bruck's PFOF ¶10.) The same day, Borchardt responded via email: "Thanks for getting back to me so quickly. Our drop box is the black box on the wall at the back of the mail room. Please do what you can today and I'll notify corporate that the rent will be here Monday. Thank you!" (*Id.*)

On October 9, 2017, Borchardt advised Trivedi via email that her October rent had not been paid, and that a five-day notice to quit or pay rent would be issued on October 10, 2017, if rent was not received by then. (*Id.* ¶ 12.) On October 10, 2017, Borchardt emailed Trivedi to advise Trivedi that a five-day notice was being sent to Trivedi on that date. (*Id.* ¶ 13.) On October 17, 2017, Trivedi emailed Borchardt that "I did drop the payment off, I think I was off on the change though. I didn't do it online this time because it's really

expensive with the fees that are added for online payments." (*Id.* ¶ 14.) The payment Trivedi dropped off was a personal check for $1,218.00. (*Id.*) On October 27, 2017, the check was rejected for NSF when Northern attempted to deposit it. Because the check did not clear the bank, the bank did not pass the amount to the landlord. (Landlord and Northern's PFOF ¶ 13 and Trivedi's Resp. to Landlord and Northern's PFOF ¶ 13.)

Northern and Bruck entered into an agreement under which Bruck agreed to represent the landlord and Northern's interests in connection with eviction matters for properties managed by Northern. (*Id.* ¶ 16.) On November 1, 2017, Bruck commenced an eviction action entitled *BD 112A LLC, BD 112B LLC & Show4 LLC v. Salina Trivedi*, Dodge County, Wisconsin, Case No. 17-SC-1682 (the "eviction"). (*Id.* ¶ 18.) Trivedi retained Attorney Michael Lueder to represent her in the eviction action from November 2017 until at least early January 2018. (*Id.* ¶ 19.) On November 28, 2017 an eviction hearing was held in front of Judge Steven G. Bauer in Dodge County Circuit Court. (*Id.* ¶ 20.) At the hearing, Attorney Lueder represented to the Court that Plaintiff could pay $3,089.32 to the landlord and an agreement was reached whereby Trivedi was allowed to remain in her apartment until December 18, 2017 on the condition that she pay $3,089.32 by November 29, 2017. (*Id.*) Judge Bauer granted and entered a judgment of eviction but stayed any sort of writ of assistance on the condition that Trivedi make payment in full of $3,089.32 by November 29, 2017. (*Id.* ¶ 21.) If payment was not made by that date, the landlord and Bruck could seek the immediate issuance of a writ of restitution as of November 30, 2017. (*Id.*) Trivedi was represented by counsel at this hearing and consented to the entry of the eviction judgment. (*Id.* ¶ 22.)

Trivedi did not make payment of $3,089.32 by November 29, 2017 as required by the order entered by Judge Bauer on November 28, 2017. (*Id.*) On November 30, 2017, Trivedi drove to Northern's corporate office and made a partial payment of $1,985.00 in cash. (*Id.* ¶ 25.) On December 1, 2017, Bruck executed an affidavit of non-compliance and a proposed order to lift the stay of execution on the writ of restitution with the Wisconsin circuit court. (*Id.* ¶ 29.) On December 5, 2017, Judge Bauer signed an order instituting an immediate writ of restitution at Bruck's request. (*Id.* ¶ 31.) On December 7, 2017, Trivedi filed a motion for relief from judgment. (*Id.* ¶ 32.) A hearing was held on December 8, 2017. (*Id.* ¶ 34.) During this hearing, Trivedi, through counsel, entered into a stipulation on the record in which Trivedi was allowed to stay in the apartment through December 31, 2017. (*Id.*) The landlord's counsel noted at the hearing, however, that the original writ would expire prior to December 31. (Affidavit of Duffy Dillon ¶ 2, Ex. 2, Docket # 38-2 at 5.) The court responded:

> Well, that should be vacated and you can send me another one and you want me to sign it right away and it's ready to go and the - - you're better off to vacate that one, send another one over right away. I can sign it, but you are not going to have the Sheriff's Department act on it until after 11 o'clock on the 31st.

(*Id.* at 5–6.) A written order was entered memorializing the December 8 agreement on January 25, 2018. (Burket Aff. ¶ 2, g., Ex. 7, Docket # 37-7.) The order states as follows: "[Trivedi] will vacate the premises no later than December 31, 2017 at 11:00 a.m. . . . If [Trivedi] fails to vacate the premises by December 31, 2017, the plaintiff may without notice to [Trivedi] file a new writ of restitution for immediate possession of the unit." (*Id.*) However, despite the judge stating that Bruck could "send another [writ] over right away" for him to sign, and despite Northern having a policy to always have a writ in place in case

a tenant fails to comply with the extension terms, Bruck did not send a new writ for the judge to sign. (Landlord and Northern's PFOF ¶¶ 36, 38 and Trivedi's Resp. to Landlord and Northern's PFOF ¶¶ 36, 38.)

On December 27, 2017, Trivedi asked Northern for another extension past December 31, 2017. (*Id.* ¶ 39.) Bruck and Trivedi's counsel agreed to an extension until January 5, 2018 on the following terms: (1) that Trivedi vacate the apartment by 11:00 a.m. on January 5 or else the sheriff would be on called to remove her, (2) that Bruck would require that the court sign a writ but the landlord would hold execution until January 5, and (3) that the landlord could inspect the apartment. (*Id.* ¶ 40.) On January 3, 2018, Trivedi filed a *pro se* motion to reopen the eviction case, which was denied. (*Id.* ¶ 46.) That same day, Bruck emailed Trivedi's counsel, stating as follows: "I just asked my client if they have received the payment. They inspected the unit and there is no indication that your client intends to move as agreed. Further, she, on her own, filed a Motion to Reopen this case. What exactly is happening with this case? My client's intent is to move on the writ in the next couple of days if she's not out." (Ex. 1 to Deposition of Salina Trivedi ("Trivedi Dep."), Docket # 33-1 at 106.)

On January 4, 2018 Borchardt sent Trivedi a twelve-hour notice that management would be inspecting her apartment on January 5, 2018. (Landlord and Northern's PFOF ¶ 49 and Trivedi's Resp. to Landlord and Northern's PFOF ¶ 49.) Trivedi responded stating that she had filed a motion to reopen the eviction and that she did not believe there was an active writ in place. (*Id.* ¶ 50.) Borchardt responded on January 5, 2018 stating that there was a writ of restitution in place and stating they would take legal action if she did not cooperate. (Ex. 10 to Trivedi Dep., Docket # 33-11 at 3.) Trivedi responded that the writ

was vacated at the December 8 hearing and asked that the landlord not enter her apartment again. (*Id.*) Borchardt responded as follows:

> Unfortunately, our attorney indicates this is wrong information. We never vacated the writ. My manager is contacting the authorities today. You may want to have your attorney contact our attorney for clarification because someone has wrong information.

(*Id.* at 1.) On January 24, 2018, Trivedi, through counsel, moved to reopen the eviction case and allow counterclaims against the landlords. (Landlord and Northern's PFOF ¶ 55 and Trivedi's Resp. to Landlord and Northern's PFOF ¶ 55.) The motion was denied. (*Id.*) The court signed an order of eviction and writ of assistance to be effective January 26, 2018. (*Id.* ¶ 57.) On or around January 29, 2018, Trivedi was served by the Sheriff's office and advised that she would be removed from the apartment if she did not vacate by February 5, 2018. (*Id.* ¶ 58.) Trivedi vacated the apartment on February 4, 2018. (*Id.* ¶ 59.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). However, when the non-movant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

### 1. Rooker-Feldman Doctrine

Trivedi sues Bruck under the FDCPA and Wisconsin law. Bruck moves for summary judgment on the ground that this court lacks jurisdiction to hear any of Trivedi's claims under the *Rooker-Feldman* doctrine.

Federal district courts do not have jurisdiction over cases brought by parties who lost in state court and who seek relief from injuries caused by that prior state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923)). As such, under the *Rooker-Feldman* doctrine, a lower federal court cannot review, modify, or reverse a judicial determination made by a state court, even if that determination is challenged as erroneous or unconstitutional. *See Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 390 (7th Cir. 2019). As explained by the Supreme Court, *Rooker-Feldman* is a narrow

doctrine, "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Under this doctrine, when determining if a federal plaintiff is seeking to review a state court judgment, a court must determine whether the injury alleged in the federal complaint resulted from the state court judgment. *O'Malley v. Litscher*, 465 F.3d 799, 802 (7th Cir. 2006). If so, *Rooker-Feldman* bars the claim.

*Rooker-Feldman* also prohibits indirect attempts to undermine state court decisions. The Seventh Circuit has repeatedly held that even where a federal plaintiff's claims "do not on their face require review of a state court's decision," *Rooker-Feldman* still applies if those claims are "'inextricably intertwined' with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court. *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). In *Rizzo v. Sheehan*, the Seventh Circuit outlined the appropriate inquiry under the doctrine:

> In order to determine the applicability of the *Rooker–Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. If, however, the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment . . . *Rooker–Feldman* does not [apply]. Thus, the pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether [she] is, in fact, presenting an independent claim.

266 F.3d 705, 713 (7th Cir. 2001) (internal quotations and citations omitted).

At its heart, the *Rooker-Feldman* doctrine is grounded in the principles of comity, federalism, and finality. It is intended to safeguard state court decisions from review by lower federal courts. Stated differently, lower federal courts are precluded from acting as courts of appeals for state court judgments. The Supreme Court of the United States is the only federal court that has jurisdiction to review a state court judgment. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

As an initial matter, Trivedi argues that the Seventh Circuit has abrogated the "inextricably intertwined" standard. (Docket # 58 at 2–3.) That is not exactly correct. The Seventh Circuit has indeed expressed skepticism about the language "inextricably intertwined," *see Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014) ("We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or 'extricably') with a state court's judgment"), noting its potential to blur the bounds between *Rooker-Feldman* and the rules of preclusion, *see Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). However, the *Rooker-Feldman* analysis has not changed. The bottom-line inquiry is whether the plaintiff's alleged injury is independent of the state court judgment. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 227, 199 L. Ed. 2d 121 (2017) ("If the claim alleges an injury independent of the state-court judgment that the state court failed to remedy, *Rooker-Feldman* does not apply."); *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016) ("In order for the doctrine to apply, the state court judgment must be 'inextricably intertwined' with the federal court lawsuit. In other words, there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment.").

Regarding Trivedi's three FDCPA claims against Bruck, her principal alleged injury for all of them is emotional distress. (*See* Compl. ¶¶ 62, 68, 72.) Trivedi alleges emotional distress stemming from Borchardt's January 5, 2018 email in which she told Trivedi that a writ was in place and that they would be contacting the authorities if Trivedi did not cooperate. She further alleges emotional distress from receiving the eviction complaint from an attorney that she believed wrongly made a judgment about the likelihood of success on the claims without meaningfully reviewing the case. Finally, she alleges emotional distress from Bruck's conduct that allegedly coerced her into entering the December 8, 2017 stipulation.

Trivedi clearly does not ask for outright overturning of the state court judgment of eviction. Thus, the question is whether Trivedi seeks to indirectly review the state court judgment. To the extent Trivedi alleges emotional distress damages stemming from the December 8, 2017 stipulation on the grounds that Bruck had no right to request a writ at that time and she was coerced into entering the agreement (Compl. ¶¶ 68, 73), this would require a determination that the state court erred in lifting the stay on the writ on December 5, 2017 and in finding that the December 8 agreement was a negotiated settlement in which Trivedi waived any possible defense to the eviction (Docket # 37-15 at 3), thereby indirectly reviewing the state court judgment. Thus, these claims are barred by the *Rooker-Feldman* doctrine. However, to the extent Trivedi alleges damages from Borchardt's January 5, 2018 email in which she conveyed to Trivedi the erroneous information that a writ was in place or from Bruck's alleged misrepresentation regarding counsel's involvement in the debt collection process, this does not require me to indirectly review the state court judgment. Thus, these claims are not barred by *Rooker-Feldman*. In sum, each of Trivedi's three

FDCPA claims against Bruck allege damages, at least in part, stemming from injuries not barred by *Rooker-Feldman*. Therefore, I will not dismiss Trivedi's claims against Bruck on *Rooker-Feldman* grounds.

### 2. Claim and Issue Preclusion

Bruck argues alternatively that Trivedi's claims are barred by either claim or issue preclusion. Because I am assessing the preclusive effect of a ruling of a Wisconsin state court, I look to Wisconsin law to determine the nature and scope of preclusion. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Claim preclusion arises when the earlier case involved the same parties or their privies and the same causes of action, and the case was resolved by a final judgment on the merits. *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232, 234 (Wis. Ct. App. 1996). When these elements are satisfied, claim preclusion operates to bar not only the claims actually decided in the earlier case but also any other claim which could have been brought therein. *Id.* Issue preclusion arises when an issue was actually litigated and finally determined in the earlier case, and the interests of the party against whom preclusion is sought were sufficiently represented in that prior case. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 219, 594 N.W.2d 370, 374 (1999). Thus, issue preclusion does not bar other claims that might have been brought in the prior proceeding, but in some instances it can apply even when the parties in the prior suit are not identical to those in the instant suit. *Montana v. United States*, 440 U.S. 147, 153 (1979). To determine whether issue preclusion bars a litigant's claim, Wisconsin courts apply a two-step analysis: they ask (1) whether issue preclusion can, as a matter of law, be applied and, if so, (2) whether the

application of issue preclusion would be fundamentally fair. *Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 19, 728 N.W.2d 693, 702 (2007).

As to claim preclusion, Bruck was clearly not a party to the underlying eviction action. Bruck argues, however, that it was a privy to the defendants (the landlords) by virtue of being its legal counsel. (Docket # 51-1 at 22.) In order to be in privity with a party to a judgment, "one must have such absolute identity of interests that the party to the earlier action represented the same legal interest as the non-party to that first action." *In re Paternity of Amber J.F.*, 205 Wis. 2d 510, 516, 557 N.W.2d 84, 86–87 (Wis. Ct. App. 1996). In this case, as counsel for its client, Bruck has a separate legal interest from Northern. Bruck has no personal stake in evicting Trivedi, its interest during the eviction was to effectively represent its client. Thus, claim preclusion does not bar Trivedi's claims against Bruck.

Nor does issue preclusion bar Trivedi's claims. Bruck argues that the state court already determined that the eviction action resulted in a "negotiated settlement" and Trivedi's claims are based upon actions that were expressly contemplated by the settlement agreement. (Docket # 51-1 at 23–24.) But Bruck was not a party to the negotiated settlement and none of the FDCPA claims Trivedi raises against Bruck were "actually litigated" in the eviction proceeding. *See Cirilli v. Country Ins. & Fin. Servs.*, 2013 WI App 44, ¶ 8, 347 Wis. 2d 481, 490, 830 N.W.2d 234, 239. These are distinct claims. Thus, Trivedi's claims against Bruck are not barred by issue preclusion.

*3.	The Merits of Trivedi's FDCPA Claims*[1]

Bruck alternatively argues that Trivedi's FDCPA claims against it fail as a matter of law. Again, Trivedi brings three FDCPA claims against Bruck. In Count One, Trivedi alleges that Bruck violated 15 U.S.C. § 1692e(5) by threatening to take legal action it could not legally take. Specifically, that Bruck, through Northern, threatened to execute a non-existent writ. In Count Two, Trivedi alleges that Bruck violated 15 U.S.C. § 1692e(3) by falsely representing that an attorney was meaningfully involved in the debt collection process. And finally, in Count Three, Trivedi alleges that Bruck violated 15 U.S.C. § 1692d by harassing Trivedi. I will address each claim in turn.

### 3.1	15 U.S.C. § 1692e(5)

Trivedi alleges that Bruck violated § 1692e(5) by threatening to execute a non-existent writ. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute specifies sixteen types of conduct that run afoul of this prohibition and Trivedi relies on § 1692e(5), which proscribes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

In general, the protections of the FDCPA are subject to two limitations. *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018). First, the statute's substantive provisions apply only to "debt collectors." *Id.* Second, the statute applies only to communications made in connection with the collection of any debt. *Id.* The evidence shows that the email Trivedi alleges violates § 1692e(5) was sent by Borchardt, who is

---

[1] Bruck has also filed a motion for *in camera* review of certain communications between Bruck and Northern to determine whether Northern has waived its attorney-client privilege, therefore allowing Bruck to produce and reference the materials in this case. (Docket # 41.) Because these documents are unnecessary to resolve Bruck's motion, I will deny the request as moot.

Northern's property manager. Trivedi does not allege that Borchardt was an agent of Bruck, nor does she allege that Northern is a debt collector under the FDCPA. Trivedi alleges, however, that Bruck made a false statement to Northern (i.e., that the writ was still active), knowing that Northern would then communicate the statement to Trivedi. (Compl. ¶ 61.) In other words, Northern merely puppeted Bruck's false statement. Trivedi attempts to shoehorn Northern's (the creditor's) communication into the FDCPA by arguing that it was really Bruck (the debt collector) making the offending communication. While a creditor may, in some circumstances, be held liable under fair debt collection statutes for the acts of its collection agent, *see Patzka v. Viterbo Coll.*, 917 F. Supp. 654, 661 (W.D. Wis. 1996), Trivedi seeks to hold the collection agent liable for the acts of the creditor. It is difficult to see how Northern could possibly be Bruck's agent when Bruck was Northern's counsel. Trivedi provides no legal support for the proposition that a debt collector can violate the FDCPA through a third-party who is not the debt collector's agent.

Furthermore, a statement does not automatically violate the FDCPA simply because it is false. *Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009). Trivedi bears the burden of proving that the false statement would mislead or deceive the unsophisticated consumer, *id.* at 800, and that the false statement was material, *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009). Lawsuits alleging deceptive or misleading statements fall into three distinct categories: (1) cases involving statements that plainly, on their face, are not misleading or deceptive; (2) cases involving

statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer; and (3) cases involving statements that are plainly misleading on their face. *Ruth*, 577 F.3d at 800–01. If a statement falls into category one, summary judgment must be granted for the defendant. If a statement falls into category three, summary judgment must be granted for the plaintiff. If a statement falls into category two and the plaintiff fails to produce extrinsic evidence to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive, summary judgment must be granted for the defendant. *See id.*

Because Trivedi does not present any extrinsic evidence at the summary judgment stage, she must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature. *Lox*, 689 F.3d at 822. Trivedi must also demonstrate that Borchardt's email contained a *materially* false statement. *See id.* However, Trivedi simply alleges that Bruck made a false statement, i.e., that there was an active writ when there was not. (Compl. ¶ 61.) Trivedi makes no attempt whatsoever to argue that the email was plainly and clearly misleading on its face. Only in her proposed sur-reply does Trivedi even attempt to show that the allegedly false statement was material, but still fails to address whether the statement was misleading as well as false. (Docket # 74 at 9.) I need not consider these undeveloped arguments. *See United States v. Olmeda-Garcia*, 613 F.3d 721, 723–24 (7th Cir. 2010).

Although Trivedi is the non-moving party, she bears the ultimate burden at trial of proving her FDCPA case. Thus, she retains the burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Trivedi has failed to do so.

Thus, summary judgment will be granted in favor of Bruck on Count One of Trivedi's complaint.

### 3.2    15 U.S.C. § 1692e(3)

Trivedi alleges that Bruck violated § 1692e(3) by misrepresenting that an attorney was meaningfully involved in the debt collection process when it filed the eviction complaint against her. Specifically, Trivedi argues that Attorney Deborah Bruck, who signed the eviction complaint but failed to review the complaint, falsely represented her level of involvement in the case. (Docket # 58 at 16.)

The FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). A communication purporting to be from an attorney "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). If, however, the communication "is not the product of the attorney's professional judgment—if [s]he has not independently determined that the debt is ripe for legal action by reviewing the debtor's file, for example . . . then the [communication] is misleading" and violates § 1692e. *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

Attorney Bruck testified to the following practice regarding how her firm processes evictions. First, the client determines an eviction is warranted and sends relevant documents to Bruck via email. (Bruck PFOF ¶ 19, a. and Trivedi's Resp. to Bruck PFOF ¶ 19, a.) Next, a Bruck clerical employee opens a file and scans the client documents into the file. (*Id.* ¶ 19, b.) Then, the client materials are reviewed by Attorney Bruck and Attorney Burket to determine whether eviction is warranted. This includes: (1) cross-reference the client

documents with the file opened by the clerical employee to make sure no human error occurred in opening the file; (2) verify all the client documents show the same demographic information for the tenant; (3) cross-check the demographic information with Bruck's system to make sure the tenant's contact information is correct; (4) verify Bruck had received a copy of the existing lease; (5) verify Bruck had received a current tenant ledger from zero balance to show the claimed balance correctly matched the balance entered by Bruck's clerical employee on the file; (6) verify the math on the tenant ledger balance; (7) verify Bruck received a copy of a client-prepared affidavit of service to confirm a notice terminating tenancy had been properly served on the tenant with the proper notice; (8) review the actual five-day notice itself; (9) review the tax assessor's information to verify the current owners of the property; (10) review any other client-provided documentation, which might include non-standard rental provisions, PACER searches for bankruptcies, and/or military searches; and (11) verify the eviction would only be served on the proper parties. (*Id.* ¶ 19, c.) If either Attorney Bruck or Attorney Burket identified any concerns during this process, Bruck would hold off on filing an eviction until the concerns were addressed. (*Id.* ¶ 19, d.) During the relevant time period, Attorney Jonathan Burket drafted all of the eviction summons and complaints filed by Bruck and Attorney Burket was authorized by Attorney Bruck to sign her name to all eviction pleadings filed by Bruck. (*Id.* ¶ 19, e.) While Attorney Bruck testified that she and Attorney Burket review the file sent from the client to determine whether suit should be filed, she does not review the summons and complaint after Attorney Burket drafts them. (Bruck Dep. at 28–35.)

Trivedi argues Bruck's routine practices do not amount to meaningful review for several reasons. First, Trivedi argues that it is a *per se* violation of § 1692e(3) for Attorney

Bruck to allow Attorney Burket to sign and file the eviction complaint under her name. (Docket # 58 at 16.) Trivedi cites to no case law supporting this contention. Rather, the principal cases on violations of § 1692e(3) involve mass-produced dunning letters mechanically signed by an attorney where the attorney had little to no involvement in the mailing of the letters. *See Avila*, 84 F.3d 222. This practice violates the FDCPA because it creates the false and misleading impression that the communications were from an attorney, when, in fact, they were not really "from" an attorney in any meaningful way. *Id.* at 229. As the Seventh Circuit noted, "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Id.* Therefore, an unsophisticated consumer will construe a letter with an attorney's name on it to reflect an attorney's professional judgment that a debt is delinquent and ripe for legal action. *Nielsen*, 307 F.3d at 635, 638. "[A] debt collection letter that is issued on an attorney's letterhead and over his signature conveys the notion that the attorney has 'directly controlled or supervised the process through which the letter was sent'—i.e., that he has assessed the validity of the debt, is prepared to take legal action to collect on that debt, and has, accordingly, decided that a letter should be sent to the debtor conveying that message." *Id.* at 635 (quoting *Avila*, 84 F.3d at 229).

Bruck's situation is different. Bruck has a junior attorney draft and file a summons and complaint (with the senior attorney's signature on it), after both the junior attorney (Attorney Burket) and the senior attorney (Attorney Bruck) review the materials from the client to determine whether eviction is warranted. (Bruck PFOF ¶ 19, c. and Trivedi's Resp.

to Bruck PFOF ¶ 19, c.) The concern of the FDCPA is that creditors not use an attorney's perceived authority to "up the ante" on a debtor when in reality the attorney had no independent involvement in sending the letter, filing the lawsuit, etc. Bruck's undisputed process is a far cry from using an attorney's name to "get the debtor's knees knocking," *see Avila*, 84 F.3d 229, when the attorney had only cursory involvement in the debt collection process.

Next, Trivedi argues that a reasonable factfinder could conclude that Bruck does not meaningfully review its files before commencing suit. (Docket # 58 at 17–25.) Trivedi argues that Bruck has a very heavy caseload, Bruck does not receive sufficient information from its clients and fails to sufficiently investigate its cases before filing suit, and Bruck's fee agreement incentivizes counsel to spend minimal time on files. (*Id.*)

Trivedi cites to Bruck's recent case load. (Trivedi's Proposed Findings of Fact ¶¶ 13–20, Docket # 60.) For example, Trivedi asserts that Attorney Bruck's calendar shows a total of 384 hearings in four weeks in October 2019 (*id.* ¶ 15) and Bruck filed 163 new cases between August 29 and September 27, 2017 (*id.* ¶ 13). She also asserts that Bruck did not supply a list of hearings Attorney Burket may have covered for her during the fall of 2017. (*Id.* ¶ 16.) Although Trivedi cites several out-of-district cases in support of her position that evidence of an attorney's heavy case load defeats summary judgment on a § 1692e(3) claim, she relies principally on two district court cases from this circuit—*Boerner v. LVNV Funding, LLC*, 326 F. Supp. 3d 665 (E.D. Wis. 2018) and *Bahena v. Jefferson Capital Sys.*, 363 F. Supp. 3d 914 (W.D. Wis. 2019).

In *Boerner*, the court considered not only evidence of the attorney's schedule, but the fact that the collection law firm used a legal assistant to review files for suit and utilized pre-

made, assembly-line fashion complaints to find that a reasonable jury could conclude there was no professional judgment exercised regarding whether and how to pursue the claims. 326 F. Supp. 3d at 779–80. In that case, although the firm received the entire debtor file from the creditor, the facts were unclear regarding who determined which claims to pursue and whether the attorneys actually reviewed the file before drafting the complaint. *Id.* In *Bahena*, the court denied the defendant's summary judgment motion based on evidence of the law firm's heavy caseload, the fact the attorney had limited access to the debtor's account information, and the fact that the process by which counsel prepared and reviewed the cases was formulaic. 363 F. Supp. at 928–29. Billing records indicated that counsel spent only one minute reviewing and preparing the plaintiff's case before signing the complaint. *Id.* at 928.

Trivedi does not argue that Bruck's stated procedure for reviewing and filing eviction actions is insufficient; rather, she asserts that it is impossible for Bruck to actually perform this procedure because of the volume of cases the firm handles. (Trivedi's Resp. to Bruck's PFOF ¶ 19, c.–d.) I disagree, however, that the number of filings, in and of itself, makes Attorney Bruck's testimony incredible. First of all, the number of filings or the number of hearings on the calendar are not necessarily indicative of the number of hearings attended. Perhaps some cases resolved prior to the hearing date or, as Trivedi acknowledges, some counties do not require a personal appearance on the small claims return date. (Trivedi's Resp. to Bruck's PFOF ¶ 25.) Further, Attorney Bruck testified that she only personally appeared in court twelve times between October 1, 2017 and January 15, 2018. (Bruck's PFOF ¶ 25.) Trivedi contests this testimony by stating that perhaps Attorney Bruck's hearings were deleted from her calendar. (Trivedi's Resp. to Bruck's PFOF ¶ 25.) Trivedi

cites in support of this theory, however, a portion of Attorney Bruck's deposition in which she specifically stated that *every* court appearance, even ones taken off the court's calendar, remain on her calendar, but with a different color coding. (Bruck Dep. at 71–72.) She testified that "nothing gets deleted." (Bruck Dep. at 72.) Thus, Trivedi merely speculates that counsel did not have enough time to conduct Bruck's stated eviction review process.

Trivedi also argues that Bruck had minimal documentation from its clients prior to filing its eviction actions. (Docket # 58 at 21.) But Trivedi concedes that Bruck has the lease, the five-day notice and proof of service, and a ledger created by the client. (*Id.*) Bruck has an internal process to double-check for the current owners of the property, review any non-standard rental provisions, and search for bankruptcies or military service. (Bruck PFOF ¶ 19, c. and Trivedi's Resp. to Bruck PFOF ¶ 19, c.) It is unclear why Bruck would also need, for example, copies of correspondence between the landlord and client or telephone records prior to filing suit, as Trivedi argues. (Docket # 58 at 21.) Further, Trivedi argues that "meaningful review" would have uncovered that Trivedi's payment under the five-day notice was dishonored due to insufficient funds. (*Id.*) But Trivedi does not assert that Northern had a duty to alert Trivedi to this fact. And while Trivedi argues that a "tenant who submitted payment but who had the payment dishonored might have been given an extension to resubmit the payment, or worked out a new payment plan . . . .," (*id.* at 21–22), Northern was not required to do so. It is unclear how any of these facts indicates a violation of § 1692e(3).

Finally, Trivedi again speculates as to Bruck's collection practices—this time asserting that Bruck's fee agreement incentivizes counsel to minimize attorney time spent on files. But speculation is insufficient to defeat summary judgment. *Austin v. Walgreen Co.*, 885

F.3d 1085, 1089 (7th Cir. 2018). This is not a situation, as *Avila* and *Nielsen* warn, of an attorney failing to reach a considered, professional judgment before filing an eviction action. Counsel are not being used as mere figureheads for Northern but are independently determining that legal action is proper after receiving Northern's file.

For these reasons, summary judgment will be granted in favor of Bruck on Count Two of Trivedi's complaint.

### 3.3     15 U.S.C. § 1692d

Trivedi argues Bruck violated § 1692d by harassing Trivedi when Bruck signed the December 1, 2017 affidavit of non-compliance and asked the court on December 5, 2017 to lift the stay on the writ. (Docket # 58 at 25–27.) Trivedi argues that she went to Northern's corporate office on November 30, 2017 and paid $1,985.00 in cash. (*Id.* at 25.) She argues that "it can be inferred" that no later than December 4, 2017, Bruck was aware of the $1,985.00 cash payment and by December 6, 2017, was aware that she paid the remainder online. (*Id.* at 26.)

Section 1692d prohibits a debt collector from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Trivedi argues that misrepresenting a key fact in litigation may violate § 1692d, citing *Eichman v. Mann Bracken, LLC*, 689 F. Supp. 2d 1094, 1100–01 (W.D. Wis. 2010) in support. (Docket # 58 at 25.) But it is unclear what "key fact" Trivedi alleges that Bruck misrepresented to the court. At the November 28, 2017 eviction hearing, Trivedi, represented by counsel, reached an agreement whereby Trivedi was allowed to remain in her apartment until December 18, 2017 on the condition that she pay $3,089.32 by November 29, 2017. (Landlord and Northern's PFOF ¶ 20 and Trivedi's Resp. to Landlord

and Northern's PFOF ¶ 20.) The judge granted and entered a judgment of eviction but stayed any sort of writ of assistance on the condition that Trivedi make payment in full of $3,089.32 by November 29, 2017. (*Id.* ¶ 21.) If payment was not made by that date, the landlord and Bruck could seek the immediate issuance of a writ of restitution as of November 30, 2017. (*Id.*) But Trivedi did not make the full payment of $3,089.32 by November 29, 2017. She acknowledges that she paid $1,985.00 on November 30, 2017. (Docket # 58 at 25–26.) So, Trivedi neither paid the full amount due, nor did so on time. Thus, even assuming Trivedi paid in full by December 6, 2017, she violated the terms of the order and Bruck was legally allowed to seek a writ of restitution. Doing so did not misrepresent any fact. Trivedi filed a motion for relief from judgment on December 7, 2017 based on her late payment, and the writ was vacated at the December 8, 2017 hearing. (*Id.* at ¶¶ 32, 34.) It does not follow, however, that Bruck engaged in any harassing behavior between December 1 and December 8, 2017, as the court's order allowed Bruck to request a writ of restitution if Trivedi failed to comply with the terms. For these reasons, summary judgment will be granted in favor of Bruck on Count Three of Trivedi's complaint.

4.    *Bruck's Motion for Sanctions*

Bruck moves for sanctions against Trivedi under Fed. R. Civ. P. 11, arguing that Trivedi's claims against Bruck are without any factual basis and are frivolous. (Docket # 46-1.) Although I grant summary judgment in favor of Bruck, I do not find Trivedi's lawsuit to be frivolous or without any basis in fact. For these reasons, Bruck's motion for sanctions will be denied.

5.    *Remaining State Law Claims*

Trivedi's Fourth (mislabeled Third), Fifth (mislabeled Fourth), and Sixth (mislabeled Fifth) Causes of Action allege state law claims against the landlord defendants, Northern, and Bruck. As to Bruck, without the FDCPA claims, all that remains is Trivedi's WCA claim. I will follow the general rule by relinquishing jurisdiction over the supplemental state law claim. *See Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007) ("A court that resolves all federal claims before trial normally should dismiss supplemental claims without prejudice."). Thus, Trivedi's WCA claim against Bruck will be dismissed without prejudice.

As to the landlord defendants and Northern, Trivedi brings no federal claims against them. Because Trivedi, the landlord defendants, and Northern are all Wisconsin citizens, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332(a). Rather, Trivedi relied on pendent party jurisdiction to include these defendants in her lawsuit. *See* 28 U.S.C. § 1367(a); *Hammond v. Clayton*, 83 F.3d 191, 194 (7th Cir. 1996) ("Pendent party jurisdiction referred to the situation where a federal court exercised jurisdiction over claims involving parties not named in any independently cognizable federal claim . . . . This caselaw clearly presupposes the existence of a claim by a pendent party plaintiff or against a pendent party defendant."). However, given the claims against the pendent party defendant (Bruck) have been dismissed, this Court no longer has subject-matter jurisdiction over the landlord defendants and Northern. For these reasons, Trivedi's remaining causes of action against the landlord defendant and Northern are dismissed for lack of subject-matter jurisdiction. I make no ruling, however, as to the merits of Trivedi's state law claims against the landlord defendants and Northern.

## CONCLUSION

Trivedi alleges that the law firm of her former landlord's management company violated the FDCPA in the course of her state court eviction proceedings. She further alleges that all defendants violated Wisconsin law. Because a rational trier of fact could not find for Trivedi, summary judgment in favor of Bruck as to Counts One, Two, and Three of Trivedi's complaint will be granted. Without the federal claims, I decline to exercise supplemental jurisdiction over the remaining Wisconsin law claim against Bruck. Without Bruck in this lawsuit, this Court lacks subject-matter jurisdiction over the landlord defendants and Northern. Thus, Counts Four, Five, and Six against these defendants are also dismissed for lack of subject-matter jurisdiction. However, I do not address the merits of these defendants' summary judgment motion.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Bruck's Motion for Summary Judgment (Docket # 44) is **GRANTED**. Counts One, Two, and Three of Trivedi's Complaint are dismissed. Count Six (mislabeled Count Five) against Bruck is dismissed without prejudice.

**IT IS FURTHER ORDERED** that BD 112A LLC, BD112B LLC, Show4 LLC, and Northern Management, LLC's Motion for Summary Judgment (Docket # 47) is **MOOT**. Counts Four (mislabeled Three), Five (mislabeled Four), and Six (mislabeled Five) against these defendants are dismissed without prejudice for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Bruck's Motion Requesting *In Camera* Review (Docket # 41) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Trivedi's Motions for Leave to File Sur-Reply Briefs (Docket # 72 and Docket # 77) are **GRANTED**.

**IT IS FURTHER ORDERED** that Bruck's Motion for Sanctions (Docket # 46) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of February, 2020.

BY THE COURT:

_s/Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge